# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| AUSTIN BEAU CUMMINGS,<br><br>    Plaintiff,<br><br>vs.<br><br>MAJOR WINGERT, TODD HARLOW, STEPHANIE SCHADE, DANA STEVENS, LEE BLANCHARD, JORMA SCHWEDLER, LUCERO, WIIGS, A. FITCH, J. WERSAL, JORGENSON, J. DONAGHU, AND JOHN DOE,<br><br>    Defendants. | C18-4021-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |

## I.  INTRODUCTION

This case is before me on two motions for summary judgment (Doc. Nos. 45, 46) seeking dismissal of the civil rights claims asserted by plaintiff Austin Beau Cummings (Doc. Nos. 1, 6). Cummings' claims relate to his time as a pretrial detainee in the Woodbury County Jail. One motion is brought on behalf of defendants Stephanie Schade and Dana Stevens (the medical staff defendants). Doc. No. 45. The other is brought on behalf of defendants Lee Blanchard, Todd Harlow, Jorma Schwedler and Major Wingert (the jail defendants).

After the motions were filed, I directed that counsel be appointed for Cummings. Doc. No. 52. The motions have now been fully briefed and are ripe for decision. Oral argument is not necessary.

## II. FACTUAL AND PROCEDURAL HISTORY

On March 6, 2018, Cummings filed a combined pro se complaint and motion to proceed in forma pauperis (IFP). Doc. No. 1. I granted IFP status and distilled the complaint to four plausible claims:

1) Cummings alleges that he was denied medical care, including an allegation that he was not treated for a broken hand and did not receive prescribed psychotropic medications.[1]

2) Cummings alleges a denial of access to the courts, specifically that when representing himself in state court, jail staff confiscated his legal materials and would not allow him to file motions.[2]

3) Cummings alleges that excessive force was used against him, specifically he was assaulted, punched, and slammed into a wall by jail staff, and also shot with a paintball gun.

4) Cummings alleges he was held in a room that contained human feces.

*See* Doc. No. 2 at 6. I directed Cummings to describe the names or identities of those involved in the alleged wrongs. *Id.* He did so via an amended complaint. Doc. No. 6.

The claims that remain in dispute for purposes of the pending motions are those about Cummings' placement in a dirty cell and the use of excessive force. The facts presented about these claims are as follows:

---

[1] The parties agree that the medical claims cannot proceed because Cummings did not pursue exhaustion of these claims via the jail's administrative remedies, which he admitted at his deposition. Accordingly, the parties agree that Stephanie Schade's and Dana Stevens' motion for summary judgment should be granted and that the medical claims should be dismissed. Those claims and parties will not be discussed further.

[2] The parties agree that there is no meritorious claim for denial of access to the courts. As such, summary judgment will be granted as to that claim, which was directed against defendants Fitch and Wersal.

In his original complaint, Cummings alleged, "I have been unreasonably assaulted by staff. I was slammed up against the wall and had my head back and staff grabbed (Wiigs) my head and slammed it against the wall, almost knocking me out staff would not take pictures." Doc. No. 1-1 at 8. He alleges that on another occasion:

> I was writing my grievance I was yelled at to get on the ground and at the same time shot with the paintball gun, almost point blank, tasers were out I was sitting down I stood up to go with staff 6 or more guards come in I said [I'm] not doing anything they then slammed me to the ground and put me in the restraint chair.

*Id.* Further, he alleges that "Sgt. Donahew had me handcuffed and punched me in the back of the leg multiple times. Jorgenson and Donahew were running with me in leg chains a fell and they carried me, then hip tossed me, kneed me." Doc. No. 1-1 at 9. He contends that on another occasion:

> Schwedler said to sit on the bed I did not know what was going on so I said for what, he then repeated to sit on the bed I again said for what he then attempted to shoot me with a paintball gun. I jumped up and down trying to avoid the shots then hid behind the wall while he tried to load up for another round. I then sat on the bed as I was told they came and hit me with the shield and tased me 3 times with 2 tasers and moved me to the poop room[.]

Doc. No. 1-1 at 10. "Also, I was kneed in the restraint chair by Sgt. Donahew." *Id.*

Regarding the dirty cell incident, in the original complaint Cummings alleged, "Unsanitary conditions, placed in someone elses poop in holding unit." Doc. No. 1-1 at 4.

The amended complaint lists the following defendants: Woodbury County Jail, Major T. Wingert, Lt. Todd Harlow, Woodbury County Jail Medical, Stephanie Schade, Dana Stevens, Lucero, Wiigs, Major Wingert, Fitch, Lee Blanchard, J. Wersal, Jorgenson, J. Donaghu, John Doe, and Schwedler. Doc. No. 6 at 1. Cummings then describes the assault incidents similarly:

> I then sat down and started writing a grievance I was not resisting. Usually they send C.O. in to talk to you this time they sent in a team. I was yelled at to get on the ground, at the same time shot with a paintball gun point blank. Tasers were out at the same time. Paintball broke pencil in half and sent part flying. So I stood up with C.O.'s at my left shoulder 6 or more staff come in on Wersal's order I yelled [I'm] not doing anything as they tried to trip me up I was then slammed on the ground put in the restraint chair. I asked Wersal (FNN) why she sent the team in she stated because 'I'm tired of your shit.'

Doc No. 6 at 4. Further:

> Sgt. Donaghu (FNU) on incident # date as of yet unknown I was handcuffed by C.O. Sgt. Donaghu, while he was holding my legs I stated I could not breath I was being pushed down on by the cuffs by 300 pound man pushing my stomach it hard to breathe. My face was an inch away from the wall. I repeatedly struggled to breath. Knew that if I didn't I would pass out. As I was struggling I was punched in the back of the leg multiple times by (FNU) Donaghu and 'told if your talking your breathing' by staff. I was hyperventilating and closterphobic held for 5 minutes waiting for restraint chair.

Doc. No. 6 at 5. Cummings reiterated that Jorgensen and Donaghu put leg chains on him and tried to run. He alleges Jorgenson then hip-tossed him, and that "[w]hile going in restraint chair I was jump kneed while cuffed with hands behind my back by Donaghu (FNU)." *Id.*

The amended complaint includes a single paragraph about the dirty cell, stating: "taken to holding cell, by (John Doe) jumpsuit[] was stepped on by (John Doe) came off I was in underware, my bare chest, open sore made contact with poop." Doc. No. 6 at 1.

In support of their motion for summary judgment, defendants Wingert, Harlow, Blanchard and Schwedler (the jail defendants) submitted the transcript of Cummings' deposition. Cummings testified that Donaghu punched him in the back of the legs and held him down, which restricted his breathing, as Donaghu attempted to place leg shackles on him. Cummings did not believe he resisted the shackles, though he admitted

4

that Donaghu probably came to his cell in response to a fight. Doc. No. 46-3 at 42-43. None of jail defendants were present for the punching incident. *Id*. at 43. As to the incident where his head was slammed into a wall, Cummings testified: "Wiig was taking me up the stairs. ... And I shouldn't have said it but I said F-you[.] ... And then he grabbed my head and slammed it against the wall....I had a bruise, and they wouldn't take pictures of it." Doc No. 46-3 at 43. Again, none of the jail defendants were present for the head-slamming incident. *Id*. at 44.

As to the incident when six or more guards came to his cell, Cummings testified that it started when a correctional officer shined a flashlight in his eyes, which made him mad. Doc. 46-3 at 1. He believed he cursed about it, was told to lock down and sat down to write a grievance. *Id*. As he was writing: "they came in. Get on the ground. Get on the ground. Pop, pop. And that was all—that was all of the opportunity they gave me to get on the ground." *Id*. He alleges the 'pop pop' was shots from a paintball gun, and that others had tasers drawn. *Id*. Two of the shots hit him in the upper right arm, but no tasers were used. *Id*. He got off the ground on command and then officers tried to trip him. *Id*. "And finally they get me and slam me on the ground, and that's when I started cursing at them." *Id*. at 45. When he cursed, he was put into leg chains and then they tried to run with him. *Id*. He complained that it was painful to run in leg chains, so they carried him for a bit and then hip-tossed him and slammed him on the ground. *Id*. After that he was placed in a restraint chair. *Id*. As he got into the chair Donaghu was kneeing him. *Id*. Eventually he was taken to the holding cell. *Id*. Again, Cummings acknowledged that the jail defendants were not involved in this incident. *Id*. at 45-46.

On a separate occasion, Cummings alleges that he sought to speak with a sergeant and was informed someone would come talk to him. Doc. 46-3 at 46. A jailer then came to his cell, he was told to sit on the bed, he asked why and was shot through the food pass with a paintball gun. *Id*. After a volley of shots, he was then tased multiple times. Schwedler is the only jail defendant Cummings associates with this incident. *Id*. at 47.

5

Additionally, Cummings testified that he was placed in a dirty holding cell on one occasion. He described "dried feces speckled all around the room, and there's a piece of toilet paper with poop on it." Doc. 46-3 at 47. He told an officer about it and the cell was cleaned right when he complained, but the toilet paper with poop was not retrieved. *Id*. Cummings also alleged, "my jumpsuit somehow came off, and they put me on the ground where the dried feces were at." *Id*. He believes he had to wait almost 24 hours before he could shower after the incident. *Id*.

Based on the parties' statements of material facts, they agree that Wingert oversees the Jail Division of the Woodbury County Jail, Harlow is a Lieutenant at the Woodbury County jail, and Schwedler and Blanchard are sergeants at the jail. Doc. No. 46-1, Doc. No. 74-1. Further, the parties agree that Wingert, Harlow, and Blanchard were not personally involved in any of the excessive force incidents. Doc. No. 46-1 at ¶ 12; Doc. No. 74-1 at ¶ 12. Cummings contends he was shot with a paintball gun on multiple occasions. Doc. No. 74-1 at ¶¶ 14-15. However, defendants assert that it was a pepperball gun, rather than a paintball gun. Doc. No. 46-1 at 14-15. Cummings alleges that defendant Schwedler was involved in one of the shooting incidents, while defendants assert that none of them were involved in any shooting incident. Doc. No. 74-1 at ¶ 15, Doc. No. 46-1 at ¶ 15.

As to the allegations regarding human feces in a holding cell, the parties agree that the Woodbury County Jail Policy requires that a holding cell be cleaned by an inmate with supervision before the inmate vacates the cell, and that the cell shall be inspected "for signs of vandalism" prior to an inmate being housed there. Doc. No. 74-1 at ¶ 18; Doc. No. 46-1 at ¶ 18. Cummings agrees that Harlow, Schwedler and Blanchard had nothing to do with the feces incident. Doc. No. 74-1 at ¶ 4. However, he insists that Wingert was responsible for keeping the jail clean, and training staff to do the same. *Id*. He contends that Harlow should have kept the jail clean. *Id*.

The jail defendants contend that the excessive force claims fail for two reasons. First, the named defendants were not associated with excessive force by name in the original or amended complaint. *Id.* at 9. Second, the named defendants cannot be held vicariously liable if there is no allegation of personal involvement. *Id.* at 9-10. As to the dirty cell claim, the jail defendants contend it fails for four reasons. First, there are insufficient factual or legal allegations to demonstrate a failure to train. Doc. No. 46-2 at 5. Second, there is no allegation that any defendant had personal knowledge of the issue. *Id.* Third, there is no allegation any of the named defendants took any action relating to the issue. *Id.* Fourth, the duration of the issue was short-lived at most, as Cummings testified that when he complained, jail staff cleaned the cell. *Id.* at 5-6.

Cummings argues that the motion for summary judgment should be denied as to Harlow and Wingert because there was a pervasive pattern or practice of excessive force, and as to Schwedler based on personal involvement in one of the paintball gun incidents. *Id.* at 9-12. Cummings further argues that the dirty cell claim should proceed against Wingert and Harlow because they oversee the jail and are responsible for effectuating the jail's policies and procedures, which include cleaning the cells. Doc. No. 74-3 at 4-8. Further, he argues that the dirty condition of the cell is evidence of a failure to properly train jail staff. Cummings argues that personal knowledge of the cleanliness of this specific cell is irrelevant. *Id.* Finally, Cummings contends that the feces incident was more serious than a mere, short exposure because the feces touched his skin. *Id.*

In reply, the jail defendants argue that I should consider the claims against them only in their official capacities, as Cummings has not alleged otherwise. Doc. No. 77 at 2. Regarding excessive force, Wingert and Harlow contend that summary judgment is appropriate because there is no material fact showing that the county was the "moving force" behind the alleged constitutional violations. *Id.* at 4. As to Schwedler, they argue the factual allegations are insufficient to demonstrate personal involvement.

With regard to the dirty cell claim, Harlow and Wingert contend there is not sufficient evidence to support a claim for failure to train or supervise. *Id.* at 2-3. They argue that a single incident of a dirty cell is not sufficient to put a county on notice of ineffective procedures. *Id.* at 3. Thus, they argue that summary judgment should be granted as to all claims against all defendants. *Id.* at 4.

I note that for reasons unexplained by the parties, seven defendants listed in Cummings' early pleadings were never formally included in this litigation as "named parties" on the docket sheet. Thus, they have never appeared and have not responded to any of the allegations. Some were named in the "additional defendants section" of the original complaint, and all were listed in the handwritten master caption of the amended complaint.

These defendants (the forgotten defendants) are Officer Lucero, Officer Wiigs, Sergeant A. Fitch, Sergeant J. Wersal, Officer Jorgenson, Officer J. Donaghu, and Officer John Doe. I will direct the Clerk of Court to add the forgotten defendants to the docket sheet for this case. I will address the forgotten defendants further, below.

For reasons that follow, summary judgment will be granted to defendants Dana Stevens and Stephanie Schade (Doc. No. 45), as well as to defendants Wingert, Harlow, and Blanchard (Doc. No. 46). Further, Officers Lucero, Fitch and John Doe will be dismissed because they are either (1) associated with claims that the parties agree should not proceed or (2) were not sufficiently addressed in Cummings' pleadings. Finally, the case shall proceed against defendants Schwedler, Wiigs, Jorgenson, Donaghu and Wersal solely on Cummings' excessive force claim.

### III. APPLICABLE STANDARDS

*A. Motion for summary judgment*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. FED. R. CIV. P. 56(a). Summary judgment is appropriate when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*. "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or "when 'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (*quoting Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine. Put another way, "'[e]vidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 578 (8th Cir. 2006) (*quoting Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The parties "may not merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008).

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249 (quotations omitted). The party moving for entry of summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (*citing*

*Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. *Id*. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

To determine whether a genuine issue of material fact exists, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id*. However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (*citing Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996)). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick*, 90 F.3d at 1377.

B.  *Section 1983 claims*

Cummings brings his claims pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). Section 1983, however, provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "[O]ne cannot go into court and claim a violation of [42 U.S.C.] 1983' –for [42 U.S.C.] 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 serves as a vehicle for plaintiffs to vindicate rights that exist under other bodies of law such as the Constitution and statutes. 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271).

## IV. DISCUSSION

### A. *Excessive force*

An excessive force claim by a pretrial detainee is evaluated under the Due Process Clause of the Fourteenth Amendment. *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014). "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n. 10, (1989). If the defendant's "purpose in [using force against a pretrial detainee]...was to injure, punish or discipline" the detainee, then the force violates the Fourteenth Amendment. *Putman v. Gerloff*, 639 F.3d 415, 421 (8th Cir. 1981). The Eighth Amendment excessive force standard applies equally, because pretrial detainees are entitled to at least as much protection under the Eighth Amendment as an inmate, if not more. *See Edwards*, 750 F.3d at 732. The core judicial inquiry under the Eighth Amendment is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (internal citation omitted).

"A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dept. of Social Serv. of City of New York*, 436 U.S. 658, 694 (1978). There are two basic scenarios under which municipal liability will attach: "(1) where a particular municipal policy or custom itself violates federal law or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009). There need not be a finding that a specific municipal employee was liable in his or her individual capacity for there to be a policy or custom. *Id.* at 818. "A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable." *Parrish v. Luckie*, 989 F.2d 201, 207 (8th Cir. 1992). A plain showing of a policy and its enactment can be sufficient if the policy or its mandates are prima facie unconstitutional. *Moyle*, 571 F.3d at 818.

By contrast, if a plaintiff alleges an informal custom or policy, he must demonstrate

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policy making officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e that the custom was a moving force behind the constitutional violation.

*Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (*citing Corwin v. City of Indep., Mo.*, 829 F.3d 695, 700 (8th Cir. 2016)). In *Brewington*, a plaintiff alleged that a sheriff and deputy in their official capacities had a custom of physically harming arrestees who attempted to flee during arrest to send a message that fleeing was not tolerated. In support, the plaintiff provided affidavits from two former deputies about the Sheriff engaging in excessive force, as well as the deposition testimony of the named deputy

defendant about past incidents of excessive force and a high-ranking sergeant who told said deputy there was a policy to make an example of fleeing arrestees. *Id.* at 801-02. The Eighth Circuit affirmed summary judgment because the evidence was insufficient to demonstrate an unofficial custom or policy. Notably, the *Brewington* Court wrote, "two incidents of excessive force—even assumed to be true—cannot be considered a pattern of widespread and pervasive unconstitutional conduct." *Id.* at 802 (citing numerous cases in support of the proposition that a discrete handful of incidents do not establish a pattern of unconstitutional conduct). The Seventh Circuit has further defined the standard for establishing a custom or widespread practice, requiring a plaintiff to show "more than the deficiencies specific to his own experience." *See, e.g., Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016).

All named defendants seek dismissal of the excessive force claims due to lack of personal involvement and insufficient factual allegations. Because Cummings agrees that the record does not support an excessive force claim against Blanchard, I will grant summary judgment in his favor on that claim. However, Cummings contends that there are genuine issues of material fact that preclude the entry of summary judgment in favor of Schwedler, Harlow, and Wingert on the excessive force claim. As noted above, Cummings alleges personal involvement by Schwedler in the incident in which he contends he was shot through his cell's food pass with a paint or pepper ball gun and tased multiple times. In his initial complaint he claimed Schwedler was the shooter. During his deposition, he testified that the incident started when he asked jail personnel to speak with a sergeant. He waited for the sergeant to return, but suddenly someone else demanded that he sit on his bed and immediately began shooting at him through the food pass. Various individuals then entered his cell and tased him.

Cummings testified that Schwedler was involved in the incident. Defendants contend Cummings has not provided enough evidence to show Schwedler's personal involvement, but they have provided no evidence to the contrary. Based on Cummings'

13

testimony, I find that there is a genuine issue of material fact as to Schwedler's personal involvement in this incident. I further find that if the incident occurred as Cummings has described it, the finder of fact could determine that it constituted the excessive use of force.

Defendants also argue that Cummings did not submit a grievance about this incident, meaning it was not fully exhausted. However, Cummings testified that he did submit a grievance and has never been provided with a complete set of copies of all his grievances. Based on this testimony, I am unable to find, as a matter of law, that Cummings failed to exhaust his available remedies. Schwedler's motion for summary judgment on Cummings' excessive force claim must be denied.

As for Wingert and Harlow, they contend there is insufficient evidence of personal involvement or of a harmful custom or policy. I agree. Cummings' most-succinct allegation is that because there were four instances of excessive force that he allegedly grieved, Harlow and Wingert gave an express or implied approval for the use of excessive force against him. Like the plaintiff in *Brewington,* who presented anecdotal evidence of excessive force being used against arrestees who fled, Cummings' evidence is anecdotal at best. Four isolated incidents of alleged excessive force, by different individuals on different occasions, and with different factual scenarios, are not sufficient to create a material dispute as to a custom or practice of permitting the use of excessive force. In addition, Cummings has submitted scant information about any "injuries" he suffered because of the alleged practice. Wingert and Harlow are entitled to summary judgment on Cummings' excessive force claim.

### B. Dirty cell

A pretrial detainee's conditions of confinement are analyzed under the Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520 (1979). "The proper inquiry is whether those conditions amount to punishment of the detainee, for, under the Due Process Clause, a

14

detainee may not be punished prior to an adjudication of guilt." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Whether conditions of confinement constitute punishment is a totality of the circumstances analysis about the condition at issue, the facts surrounding it, and the duration, among other things. *Id*. at 268-69. "Conditions such as a filthy cell that may be tolerable for a few days are intolerably cruel for weeks or months." *Id*. The Eighth Circuit has found that five weeks of sleeping on the floor next to a toilet, where the plaintiff was splashed by his cellmate's urine each night, was a sufficient factual allegation to proceed beyond summary judgment. *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). By contrast, exposure to human waste of four, six, and even eleven days, may be tolerable. *Id*. (citing *Smith,* 87 F.3d at 268).

To establish a claim for failure to train, a plaintiff must show (1) the training was inadequate, (2) the failure to train reflects a deliberate and conscious choice by the defendant, and (3) an alleged deficiency in the defendant's training procedures caused plaintiff's injuries. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Here, the parties agree that Blanchard and Schwedler had no responsibility for the cleanliness of the cell in which Cummings was placed. As such, I will enter summary judgment in their favor on this claim.

By contrast, Cummings alleges that Wingert and Harlow should be held liable for failure to train jail staff because jail policy requires that a cell be cleaned and inspected prior to the arrival of a new occupant and this cell was not clean when Cummings entered. This allegation falls far short. Cummings presents no evidence as to how the training was inadequate, nor does the record contain evidence that any inadequate training was the result of a deliberate or conscious choice by Wingert or Harlow. Cummings contends that if he had access to grievances filed by others, he may be able to show that others had previously found their cells to be in such a condition. He alleges this would show that jail policy was not always followed. However, such evidence (if it existed) would not create a genuine issue of material fact about the adequacy of training in general, let alone

15

about Wingert's and Harlow's involvement with training.[3] Like Blanchard and Schwedler, Wingert and Harlow are entitled to summary judgment on Cummings' dirty-cell claim.

### C. *The forgotten defendants*

As discussed earlier, seven defendants listed by Cummings when he commenced this case appear to have been omitted by error. Those forgotten defendants are Officer Lucero, Officer Wiigs, Sergeant A. Fitch, Sergeant J. Wersal, Officer Jorgenson, Officer J. Donaghu, and Officer John Doe.

The first order I issued in this case narrowed the scope of the claims that would proceed by exercise of the inherent authority I have to manage and review pro se litigation. *See* Doc. No. 2; *Neitzke v. Williams*, 430 U.S. 319 (1989) (extensively discussing the inherent authority a court has to dismiss claims); 28 U.S.C. § 1915(e)(2)(B)(ii). I will apply the same standards here. As noted above, defendants Fitch and Wersal from the denial of access to the courts claim because the parties now agree that the record does not support such a claim. *See* Doc. Nos. 46, 74. This was the only claim against Fitch so he will be dismissed entirely. In addition, I will dismiss all claims against defendants Lucero and John Doe because Cummings has not made sufficient factual allegations against them to suggest that they were personally involved with an identified constitutional harm. *See* Doc. Nos. 1, 6; *White v. Jackson*, 865 F.3d

---

[3] Cummings attempts to save this claim by arguing that his encounter with feces in the dirty cell was more severe than a brief exposure. However, by his own testimony the exposure was momentary. In *Owens*, the Eighth Circuit found that physical exposure to urine continued for too long, for constitutional purposes, when it occurred on a daily basis for five weeks. 328 F.3d at 1027. The court contrasted its conclusion with cases addressing exposure to filth for four days, six days, and eleven days. Cummings' momentary exposure is far less than the duration of exposures in cases that did not meet the threshold for cruelty.

1064, 1081 (8th Cir. 2017) ("To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation.").

This leaves defendants Wiigs, Jorgenson, Wersal and Donaghu. According to Cummings' pleadings and/or deposition testimony, all four participated in one or more excessive force incidents in a similar manner to Schwedler. Based on the allegations against these four defendants, and in light of the fact that this case is at an early stage as to them, I find that the Cummings' excessive force claim should proceed as against them.

Attorney Douglas Phillips, who currently represents defendant Schwedler and the other jail defendants, shall advise the court within 30 days of the date of this order if he will be representing defendants Wiigs, Jorgenson, Wersal and Donaghu in this case. If so, he shall also advise the court as to whether those defendants will require formal service of process. If service of process is required, I will file a separate order directing service pursuant to Federal Rule of Civil Procedure 4(c)(3).

## V. CONCLUSION

For the reasons set forth herein:

1. The motion (Doc. No. 45) for summary judgment filed by defendants Stephanie Schade and Dana Stevens is **granted in its entirety** and those defendants are **dismissed** from this lawsuit.

2. The motion (Doc. No. 46) for summary judgment filed by the jail defendants is **granted in part** and **denied in part**. The motion is **granted** as to defendants Wingert, Harlow, and Blanchard. Those defendants are **dismissed** from this lawsuit. As to defendant Schwedler, the motion is **granted** as to all claims except plaintiff's claim for excessive force. The motion is **denied** as to that claim.

3. As such, Cummings' claim for excessive force shall proceed as against defendant Schwedler and as against the following forgotten defendants: Wiigs, Jorgenson, Donaghu, and Wersal.

4. Attorney Douglas Phillips shall file a notice, within 30 days of the date of this order, indicating whether he will be representing defendants Wiigs, Jorgenson, Wersal and Donaghu in this case. If so, the notice shall state whether those defendants will require formal service of process.

**IT IS SO ORDERED.**

**DATED** this 31st day of March, 2020.

_____
Leonard T. Strand, Chief Judge